# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **MATHEW ROGERS**, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>**EFPTR LLC**,<br><br>       Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## CLASS ACTION COMPLAINT

1. Mathew Rogers ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant EFPTR LLC ("EFPTR" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and its unlawful telemarketing tactics.

### PARTIES

5. Plaintiff Mathew Rogers is a natural person and a citizen of Nashville, Tennessee. He is domiciled in Tennessee, where he intends to remain.

1

6. On information and belief, Defendant EFPTR, LLC was—at least at some point in time—a New Jersey limited liability company. However, EFPTR, LLC no longer appears to be registered in New Jersey. On further information and belief, EFPTR, LLC does business as "Eastern Financial Partners," offering "debt restructuring" services. EFPTR, LLC maintains offices in New Jersey (at 52 Hartshorn Dr., Colts Neck, New Jersey, 07722, and also at 125 Half Mile Road, Suite 200, Red Bank, New Jersey, 07701), yet posts job listings for in-person positions in Boca Raton, Florida. On still further information and belief, EFPTR, LLC is a successor entity to another business called Alliance Capital Funding, LLC. Both businesses are owned by Adam Cuddyer, who lists himself as the "Owner at Alliance Capital Funding":



7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8. This Court has specific personal jurisdiction over Defendant because it directed telemarketing calls to Tennessee which establishes sufficient minimum contacts for claims arising from those telemarketing calls.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**BACKGROUND**

*The Telephone Consumer Protection Act*

10. Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

12. "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It

means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

13.     As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

14.     The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(b)(3), (c)(5).

15.     For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

16.     Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17.     The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18.     The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

19. The TCPA prohibits the use of artificial or prerecorded voices when calling residential telephone numbers. 47 U.S.C. § 227(b)(1)(B).

20. The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

21. For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***Plaintiff Mathew Rogers***

22. Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

23. Plaintiff's residential telephone number is 608-774-XXXX (the "telephone number").

24. To avoid unsolicited telemarketing calls, Plaintiff personally placed his telephone number on the National Do-Not-Call Registry on January 22, 2007. Since then, Plaintiff has not removed his telephone number from the National Do-Not-Call Registry.

25. Plaintiff uses his telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

26. Plaintiff has not used his telephone number for business purposes, aside from the occasional use for work calls of a personal nature, such as reaching out to a handyman on the job.

27. Plaintiff has not associated his telephone number with any business.

5

28. Plaintiff has been the sole owner (i.e., user) of his telephone number for approximately the past ten (10) years.

29. During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

30. Plaintiff has never received reimbursement from any business for his telephone number.

31. Plaintiff has never taken a business-related tax deduction for his telephone number.

32. Plaintiff maintained a separate business telephone number of 954-613-XXXX, which is no longer in service. That telephone number is not the subject of this litigation.

33. Plaintiff filled out online health insurance and business loan inquiries over twelve (12) months ago, but is not a current or former customer of Defendant.

34. Plaintiff has never had a business relationship with Defendant.

35. Plaintiff never provided his telephone number to Defendant.

36. Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

***Defendant Engages in Telemarketing***

37. Defendant "provide[s] business debt restructuring for businesses with Merchant Cash Advances only," and "specialize[s] in MCA negotiations."[1]

38. Simply put, Defendant sells debt restructuring services.

---

[1] *How It Works*, EASTERN FINANCIAL PARTNERS, https://www.easternfinancialpartners.com/en/how-it-works (last visited Mar. 10, 2026).

39. A screenshot of Defendant's website is provided below.[2]




**What services do you offer?** —

We provide business debt restructuring for businesses with Merchant Cash Advances only. We specialize in MCA negotiations, making us the best choice in the country for businesses restricted by MCA terms.

**How does debt restructuring work?** —

Every business's debt is unique and the restructuring plan is on a case by case basis, however in a general term, we analyze your debt commitments and your payment schedules, and based on the lenders, we can determine how much of the commitments can be renegotiated.

Our attorneys submit over $20 million in debt restructure settlements to various lenders, and our relationships with them allow us to give you the best new terms to open up your business cash flow, along with getting you out of the debt faster than on your own.

**Can I afford this?** —

Your daily or weekly Merchant Cash Advance payments are usually exorbitantly high, and when we renegotiate your MCA terms, the new payment will be lower than what you are paying now, the principal balance will be lower, and our service charges will be already included in your lower payment.

We are in the business of helping small to medium-size businesses, making sure they stay running & keep their cash flow profitable.

40. Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[3] Indeed, the Bureau of Labor Statistics has reported that the "Business Support Services" industry has one of the highest levels of telemarketing.[4]

41. To sell its services, Defendant (or its third-party agents) engages in telemarketing campaigns.

42. Defendant has already received numerous complaints about its unlawful telemarketing practices.

---

[2] *Id.*

[3] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.

[4] *Id.*

43.    Screenshots of consumer complaints to the Better Business Bureau[5] and Yelp[6] are provided below.

**Initial Complaint**

Date: 08/20/2025

Type: Service or Repair Issues

Status: Answered

I have been receiving multiple phone calls from this organization multiple times per day for months now. They call from different numbers. I have asked them to stop calling me and to take me off their call list. The representative today 8/20/2025 proceeded to try and speak over me and then proceeded to curse at me before I hung up on them. after I hung up I received another phone call solicitation from them. This needs to stop!

**Business Response**

Date: 08/21/2025

We have put the employee who made the call on a probationary period and generated a written notice regarding the behavior which is placed in his personnel file with HR.

We have put Mr. ████████ on our DNC list.

---

[5] *Eastern Financial Partners*, BETTER BUSINESS BUREAU, https://www.bbb.org/us/nj/red-bank/profile/financial-services/eastern-financial-partners-0221-90236109/complaints (last visited March 17, 2026).
[6] *Eastern Financial Partners*, YELP, https://www.yelp.com/biz/eastern-financial-partners-boca-raton?osq=Debt+Relief+Services (last visited Mar. 10, 2026).



★☆☆☆☆   Nov 5, 2024

Constantly calling my Business line tying up the call lines with this Daily non-stop garbage trying to absolve me of my business financial responsibilities and obligations! I owe the money, I'm appreciative of the Bank's lending me the money and I'm also responsibly paying back my debt, yet they want me to DEFAULT!!! Every day, same call!! Ridiculous!!

Helpful **1**    Thanks **0**    Love this **0**    Oh no **0**



★☆☆☆☆   Apr 22, 2025

They won't stop calling me, even though I have told them to take me off their list repeatedly. Representatives are incredibly rude when they find out you are not interested.

Helpful **0**    Thanks **0**    Love this **0**    Oh no **0**



★☆☆☆☆   Oct 23, 2024

Same here. Nonstop calls even after I tell them to stop calling. Do they think I plan to use them ever?

### *Defendant violated the TCPA*

44. As explained below, Defendant violated the TCPA numerous times.

45. Defendant first contacted Plaintiff by telephone on June 13, 2024. Since then, Plaintiff has received at least six (6) calls from Defendant, originating from telephone numbers associated with Defendant, including but not limited to (608) 409-4603, (608) 409-4609, and (608) 409-4610.

46. Plaintiff answered the call, and Defendant then attempted to solicit Plaintiff to purchase debt restructuring services.

47. Defendant placed numerous telephonic solicitations to Plaintiff's telephone number, including, on information and belief, the following:

    a. June 13, 2024, from (608) 409-4610;

    b. July 20, 2024, (608) 409-4603;

    c. August 13, 2024, from (608) 409-4609;

    d. September 6, 2024, from (608) 409-4609;

    e. September 16, 2024, from (608) 409-4609; and

    f. September 25, 2024, from (608) 409-4609.

48. On July 30, 2024, Defendant left a voicemail on Plaintiff's telephone number. The voicemail stated:

> "Hi. This is Frank with Eastern Financial. We specialize in restructuring high interest business loans, reducing your daily or weekly payments by as much as 60% and reducing your payback principal by 30%. Give me a call at (888) 357-0093 to discuss what we can do for you. Thank you."

49. On September 6, 2024, Defendant left a voicemail on Plaintiff's telephone number. The voicemail stated:

> "Hi. This is Ashley with Eastern Financial. If your business is experiencing high daily or weekly payments to merchant cash advance lenders, our firm specializes in reducing the balance up to 30% and more importantly, the daily or weekly payments by 50% or more, injecting immediate cash flow back into your business. If this is something you feel like your business can benefit from, please give us a call back at (888) 357-0093. Again, it's (888) 357- 0093. We look forward to hearing from you and have a great day."

50. On September 16, 2024, Defendant left a voicemail on Plaintiff's telephone number. The voicemail stated:

> "Hi, this is Frank with Eastern Financial. We specialize in restructuring high-interest business loans, reducing your daily or weekly payments by up to 60% and lowering your payback principal by 30%. Please give me a call at (888) 357-0093 to discuss what we can do for you. Thank you."

51. On September 25, 2024, Defendant left a voicemail on Plaintiff's telephone number. The voicemail stated:

> "Hi, this is Frank with Eastern Financial. We specialize in restructuring high-interest business loans, reducing your daily or weekly payments by up to 60% and lowering your principal payback by as much as 30%. Give me a call at (888) 357-0093 to discuss what we can do for you. Thank you."

52. In other words, Defendant called Plaintiff's telephone number and attempted to solicit Plaintiff to purchase its debt restructuring services.

53. The telephone calls and voicemails featured a voice with a monotone pitch and robotic cadence—indeed, the voice lacked the typical pitch inflections, pauses, missteps, and "filler words" (e.g., "um") that characterize normal human speech. Thus, on information and belief, the telephone calls and voicemails in question used a prerecorded or artificial voice.

54. During the telephone calls and voicemails, the caller spoke in a crisp and efficient manner—without the typical pauses, missteps, and "filler words" (e.g., "um") that characterize extemporaneous conversation. Thus, on information and belief, the caller read directly from a standardized script.

55. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided his consent or requested the calls.

11

56. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

57. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

> **Internal Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers received two or more telephone calls from, or on behalf of, Defendant (2) during a 12-month period, (3) within four years prior to the commencement of this litigation and up until the date of trial, (4) and who had previously requested for the telephone calls to stop.

> **Prerecorded Voice Class**: All persons in the United States (1) whose telephone number (2) received one or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period, (4) within four years prior to the commencement of this litigation and up until the date of trial, and (5) when the telephone call used a prerecorded or artificial voice.

59. Together, the various classes are referred to as the "Class."

60. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

61. Plaintiff reserves the right to amend the class definition.

62. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

63. **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

64. **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

65. **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarketing practices.

66. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

67. **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

   a. whether Defendant violated the TCPA;

   b. whether Defendant violated the TCPA willfully and knowingly;

   c. whether Plaintiff is entitled to statutory damages;

d.      whether Plaintiff is entitled to treble damages;

e.      whether Defendant should be enjoined from further TCPA violations.

68.     **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

<u>**FIRST CAUSE OF ACTION**</u>
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

69.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

70.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

71.     Defendant violated the TCPA willfully or knowingly.

14

72.     Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

73.     Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

<u>**SECOND CAUSE OF ACTION**</u>
**Telephone Consumer Protection Act**
**Violations of 47 C.F.R. § 64.1200(a)(1)and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Prerecorded Call Class)**

74.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

75.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Prerecorded Call Class while using a prerecorded and/or artificial voice.

76.     Defendant violated the TCPA willfully or knowingly.

77.     Plaintiff and Prerecorded Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

78.     Plaintiff and Prerecorded Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Prerecorded Call Class Members.

<u>**THIRD CAUSE OF ACTION**</u>
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do-Not-Call Registry Class)**

79.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

80.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate…any call for telemarketing

15

purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in…any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

81. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

82. Plaintiff and the Internal Do-Not-Call Class Members made requests to Defendant not to receive telemarketing calls from Defendant.

83. Defendant failed to honor Plaintiff's and the Internal Do-Not-Call Class Members' opt-out requests and instead continued to call Plaintiff and the Internal Do-Not-Call Class Members to harass them into making purchases from Defendant.

84. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to (1) institute procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) implement a written policy, available upon demand, for maintaining a do-not-call list; and (3) train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

85. Plaintiff and the Internal Do-Not-Call Class Members are informed and believe that Defendant (1) has not instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity; (2) has not implemented a written policy, available upon demand, for maintaining a do-not-call list; and (3) does not train its personnel engaged in telemarketing in the existence and use of the do-not-call list.

86. The details and specific facts regarding Defendant's failure to maintain the required policies, implement the required procedures, and train its personnel regarding the same, are solely within Defendant's knowledge and possession.

87. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telephonic solicitations, except for emergency purposes, to the Plaintiff and the Internal Do-Not-Call Class despite having asked Defendant to cease its telephonic solicitations.

88. Defendant violated the TCPA willfully or knowingly.

17

89.     Plaintiff and Internal Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

90.     Plaintiff and Internal Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and Internal Do-Not-Call Class Members.

### PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.     Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.     Awarding statutory damages to Plaintiff and Class Members;

C.     Providing the injunctive relief requested herein; and

D.     Granting such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

*[Counsel signatures to follow on next page.]*

18

DATED AND SUBMITTED this 17th day of March, 2026.

Respectfully submitted,

By: */s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC.**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
T: (615) 254-8801
gstranch@stranchlaw.com

Cassandra P. Miller**\***
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com

**\*applications *pro hac vice* forthcoming**

*Counsel for Plaintiff and Proposed Class*

19